IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-02971-WYD-KMT

TOUCHTONE GROUP, LLC on behalf of itself and all others similarly situated,

      Plaintiff,

v.

DANIEL J. RINK;
TATUM, LLC;
CHRISTOPHER FLANNERY;
ASTOR, WEISS, KAPLAN & MANDEL LLP;
ESTILL & LONG, LLC;
STEVEN GRANOFF, CPA;
KRASSENSTEIN, GRANOFF & UNGER, LLC;
CARBON DIVERSION, INC.;
TRACS GROWTH INVESTMENT; and
JON DOES 1-110,

      Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on several motions to dismiss filed by

Defendants.  This is a class action brought under federal and state securities laws to

recover damages resulting from a Ponzi scheme orchestrated by an entity known as

Mantria Corporation ("Mantria").  In the Complaint, Plaintiff Touchstone alleges that

Defendants materially participated in Mantria's scheme to defraud investors comprising

Plaintiff's class.  Defendants argue that Plaintiff has failed to state a valid claim for relief,

and several of the defendants argue that they should be dismissed for lack of personal

jurisdiction.

II.    RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that the defendants materially participated in Mantria's Ponzi scheme directly or through their agents while ostensibly providing professional services for Mantria.  In 2007, Mantria contracted with Defendant Tatum, LLC ("Tatum") to have Defendant Rink act as Mantria's interim CFO.  Tatum is a consulting firm that acts as a headhunter for companies seeking interim executive and financial officers.  Plaintiff alleges that at all times relevant to this action, Rink was a consultant to Mantria and remained an employee or agent of Tatum.  Compl., at ¶¶ 69-73.

In 2008, Defendant Granoff was named Mantria's controller while remaining a partner of Krassenstein, Granoff & Unger.  As Mantria's controller, Granoff worked with and reported directly to CFO Rink.

In 2009, Defendant Flannery became Mantria's Chief Legal Officer and General Counsel.  At that time, Defendant Flannery remained employed by Defendant Astor Weiss.

Finally, Estill & Long was the law firm for Speed of Wealth, a company that advertised investment opportunities with Mantria.

On August 5, 2011, Judge Christine M. Arguello entered summary judgment against Mantria for various violations of securities laws.  *SEC v. Mantria Corp., et al.*, No 09-cv-02676 (D. Colo. Mar. 15, 2011).

Plaintiff alleges that while Defendants Rink, Granoff, and Flannery worked for

Mantria, they made materially false statements to investors, otherwise aided Mantria in defrauding its investors, received fraudulently transferred assets from Mantria, and were, thereby, unjustly enriched.  Plaintiff alleges that Defendants Tatum, Krassenstein, and Astor Weiss are liable for these acts based on their agency relationship with the individual defendants.  Finally, Plaintiff alleges that Estill & Long also aided in Mantria's fraud and were unjustly enriched as a result of receiving fraudulently transferred funds from Mantria.

III.   ANALYSIS

    A.   Whether the Court Has Personal Jurisdiction Over the Defendants

        1.   Standard of Review

A plaintiff has the burden of showing that jurisdiction is appropriate.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  However, "[w]here a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *Ast Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).  In other words, the plaintiff need only present facts that, if true, would support jurisdiction over the defendant.  *Id.*  The court will resolve all factual disputes in favor of the plaintiff when determining whether personal jurisdiction is established.  *Id.*

My jurisdictional analysis is somewhat unusual in this case because Defendants Rink, Granoff, and Flannery are being sued under the Federal Securities Exchange Act,

which provides for nationwide service of process.[1]  As explained more fully below,

personal jurisdiction analysis is less exacting where a defendant is sued under a statute

providing for nationwide service of process.  *See, e.g.*, *Peay v. BellSouth Med.*

*Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000); *SEC v. Knowles*, 87 F.3d

413, 417 (10th Cir. 1996).  Thus, I apply relatively liberal jurisdictional analysis to the

defendants being sued under the Securities Exchange Act.

However, it would be improper to apply this unique standard if Plaintiff failed to

state a valid claim for relief under the Act, since it is the Act's provision of nationwide

service of process that warrants application of a unique jurisdictional analysis in the first

place.  Thus, though I address the issue of personal jurisdiction first, my jurisdictional

analysis turns in part on my subsequent determination of whether Plaintiff has stated a

claim for relief under the Act against Defendants Rink, Flannery, or Granoff.  Below, I

find that Plaintiff states a valid claim for relief under the Act against Defendants Rink

and Flannery, but not against Defendant Granoff.  Accordingly, in addressing Rink and

Flannery's jurisdictional arguments, I apply the unique jurisdictional standard for claims

brought under statutes that provide for nationwide service of process.  In contrast, I

apply the *International Shoe*'s traditional "minimum contacts" analysis to Defendant

Granoff as well as the rest of the defendants pleading dismissal for lack of personal

jurisdiction.  I mention it here so that the reader is not confused why I first conclude that

---

[1] Plaintiff also brings claims against Defendant Tatum under the Securities Exchange Act. However, I will not engage in jurisdictional analysis with respect to Tatum, which did not challenge personal jurisdiction in its motion to dismiss and, thus, waived its right to do so.  Likewise, I will assume that the Court possesses personal jurisdiction over Estill & Long, a Colorado law firm that did not challenge personal jurisdiction in its motion to dismiss.

the Court lacks jurisdiction over Granoff and then evaluate whether Plaintiff has stated a federal securities law claim against Granoff.

### 2. Whether the Court Possesses Personal Jurisdiction Over Defendants Rink and Flannery

#### i. Legal Standard

"When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *Knowles*, 87 F.3d at 417. "Specific contacts with the district in which enforcement is sought, in this case Colorado, are unnecessary." *Id.* Rather, where jurisdiction is invoked based on nationwide service of process, the law requires only that the plaintiff's choice of forum "be fair and reasonable to the defendant" such that the court's exercise of jurisdiction comports with the Fifth Amendment's guarantee of due process. *Peay*, 205 F.3d at 1212.

Under this analysis, "[t]he burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." *Id.* The Tenth Circuit has recognized that "in this age of instant communication and modern transportation, the burdens of litigating in a distant form have lessened." *Id.* at 1213. Accordingly, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 1212.

The Tenth Circuit has set forth several factors to consider when assessing

whether a defendant has met it's burden "of establishing constitutionally significant inconvenience": (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business. *Id.* at 1212. I emphasize that specific contacts with the forum district is not required to establish personal jurisdiction, even though it is a relevant factor to consider. *Knowles*, 87 F.3d at 417; *CGC Holding Co., LLC v. Hutchens*, 824 F. Supp. 2d 1193, 1204 (D. Colo. 2011) ("[T]he *Peay* analysis does not require 'minimum contacts' with Colorado as such . . . . Rather, this is one factor to consider...").

   ii. Analysis

  Defendants Rink and Flannery argue that they do not possess sufficient contacts with Colorado to be subject to the personal jurisdiction of this court. Defendants rely primarily on inapposite cases that applied the *International Shoe* "minimum contacts" analysis. As noted, this analysis does not apply to these Defendants. Instead, where,

as here, a party is sued under a federal statute providing for nationwide service of process, *Peay*'s multi-factor analysis governs whether personal jurisdiction lies. *Peay*, 205 F.3d at 1212-13. Under the *Peay* analysis, there is no requirement that contacts reach a certain threshold or, indeed, that there be any contacts at all with the forum state. *CGC Holding Co., LLC*, 824 F. Supp. 2d at 1204. Rather, contacts are only one factor to be considered in the *Peay* analysis. *Id.*

Notwithstanding their arguments about their lack of contacts with Colorado, I find that Defendants Rink and Flannery have failed to meet their burden of proving constitutionally significant inconvenience under *Peay*. First, though these Defendants' contacts appear insufficient under *International Shoe* and *Trierweiler*, they have allegedly made some non-trivial contact with the state. Plaintiff alleges that Rink Flannery participated in the preparation of fraudulent financial statements and false offerings that were then distributed to Colorado. In addition, Plaintiff alleges that these Defendants knew that Mantria was partnering with Speed of Wealth, a Colorado investment club, to disseminate false information to investors. Finally, Plaintiff alleges that Flannery approved prospective Mantria investors from Colorado as accredited and that Rink communicated directly with Colorado investors.

Defendants argue that Plaintiff's latter allegations about their direct contacts with Colorado are insignificant or based on inadmissible affidavit testimony lacking proper foundation. In addition, Defendants argue that personal jurisdiction cannot rest on Plaintiffs' allegations that Rink and Flannery knew or should have known that their

communication would be disseminated to Colorado investors.  Specifically, Defendant

Rink cites *CGC Holding Co.* for the proposition that "a defendant's alleged knowledge

that information may be used or misused by others is not sufficient to confer jurisdiction

without some purposeful conduct directed at the forum by the defendant."  (ECF No.

118), at 8.

I disagree with Defendants' assertions and further find that the authority they rely

on actually undermines the arguments they advance here.  In *CGC Holding Co.,* Judge

R. Brooke Jackson of this Court rejected the notion that contacts are required where a

plaintiff sues under a federal statute providing for nationwide service of process.  824 F.

Supp. 2d. at 1204.  Moreover, that case suggests that a defendant's ability to foresee

his communications entering the forum state is relevant under *Peay*'s jurisdictional

analysis.  *See id.* at 1207 (defendant attorney dismissed from action after writing

opinion letter allegedly used to defraud investors; reasoning, in part, that the plaintiff did

not allege that the defendant "sent the letter to any prospective borrower in Colorado or

elsewhere in the United States *or that he knew that the letter would be used to generate*

*business in Colorado or elsewhere in the United States*").  Here, Plaintiff has alleged

that these Defendants knew that their communications would reach Colorado.  Thus,

even if I were to disregard the allegations of specific intentional contacts with Colorado,

Plaintiff has alleged that Defendants made some significant contacts with Colorado

under *Peay*'s standard.

Moving on to the second *Peay* factor, Defendants Rink and Flannery have not

shown considerable inconvenience arising from defending this action in Colorado. Rather, these Defendants provide only general claims that doing so would entail significant financial hardship and general inconvenience. I find this insufficient and note that these defendants have counsel in Colorado and can rely on their counsel to manage their defenses while they reside in Pennsylvania. *See CGC Holding Co.*, 824 F. Supp. 2d at 1207-08 (noting significance of defendant having counsel in forum state).

With regard to the third and fourth factors of the *Peay* analysis, judicial economy favors this district. It would be most efficient to resolve all of these related disputes in one consolidated action in Colorado. This forum is the probable situs of a substantial portion of discovery proceedings since the Mantria documents and other items were shipped to Denver as part of the SEC action brought against Mantria.

Finally, personal jurisdiction over Rink and Flannery is supported by consideration of the final *Peay* factor—the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business. Defendants Rink and Flannery were allegedly primary participants in a broad interstate Ponzi scheme. Mantria's scheme drew millions of dollars from dozens of Colorado investors. Under these circumstances, the Court's exercise of personal jurisdiction over Rink and Flannery comports with due process.

3. Whether the Court Possesses Personal Jurisdiction Over Defendants Granoff, Krassenstein, and Astor Weiss

i. Legal Standard

Unlike Defendants Rink and Flannery, Defendants Granoff, Krassenstein, and

Astor Weiss are not subject to viable claims under the Securities Exchange Act or any other federal statute that provides for nationwide service of process.[2]  "A plaintiff seeking to invoke a Colorado court's jurisdiction over a non-resident defendant must comply with the requirements of [Colorado's] long-arm statute and constitutional due process."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Colorado's long arm statute requires that a defendant have sufficient "minimum contacts" with the state.  *Keefe v. Kirshenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270-71 (Colo. 2002)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).  Under this standard, jurisdiction can be established in one of two ways.  First, general jurisdiction "lies when the defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). "Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

Once jurisdiction has been established, the court must determine that "the

---

[2] As explained below, I find that Plaintiff has failed to allege sufficient facts to support its claim that Granoff violated sections 10(b) and 20(a) of the Securities Exchange Act. Plaintiff's claims against Krassenstein and Astor Weiss are for violation of the Pennsylvania Uniform Fraudulent Transfer Act (Count III), the Colorado Uniform Fraudulent Transfer Act (Count IV), and the Pennsylvania Securities Act of 1972 (Count XI); unjust enrichment (Count V); and vicarious liability for information negligently supplied for the guidance of others (Count VIII, X).

exercise of jurisdiction does not offend traditional notions of fair play and substantial justice" in order to subject an out-of-state defendant to personal jurisdiction. *Trierweiler*, 90 F.3d at 1533 (internal quotations omitted) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)); *International Shoe*, 326 U.S. at 316.

ii.     Analysis

I hold that this Court lacks personal jurisdiction over Defendants Granoff, Krassenstein, and Astor Weiss.  As noted, because Plaintiff does not bring claims against these defendants under the Securities Exchange Act, Plaintiff must establish specific or general jurisdiction against them under *International Shoe*'s "minimum contacts" analysis.  Plaintiff does not argue that either Granoff, Krassenstein or Astor Weiss is subject to the general jurisdiction of Colorado courts.  Rather, Plaintiff cites *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60 (Colo. 2007), and argues that the Court has specific jurisdiction over them based on the imputed contacts of their respective agents, Granoff and Flannery for the reasons noted below.

I find that Granoff's contacts with Colorado are not sufficient to satisfy the *International Shoe* standard for specific jurisdiction, and accordingly, I dismiss Plaintiff's claims against both Granoff and his employer, Krassenstein, for lack of personal jurisdiction.  Likewise, I dismiss Plaintiff's claims against Astor Weiss, which does not have sufficient contacts with Colorado individually or through its agent Flannery.

As noted, Plaintiff alleges contacts between Colorado and Granoff and Flannery based on these defendants' (1) role in the preparation of false statements that were

-11-

disseminated to Colorado investors; (2) knowledge of Mantria's partnership with Speed

of Wealth, a Colorado investment club, to attract investors from the state; and (3)

specific contacts with Colorado investors, as Granoff allegedly communicated directly

with Colorado investors (ECF No. 89, Exhibit B, at ¶ 20), and Flannery allegedly

approved Colorado investors as accredited (ECF No. 1, at ¶¶ 85-86), which

occasionally required telephoning Mantria's Colorado law firm, Estill & Long.  Plaintiff

also alleges that Astor Weiss funneled at least $4 million out of Colorado through Speed

of Wealth.  (ECF No. 1, at ¶ 21; ECF No. 89, Exhibit B, at ¶ 14.)

To establish specific jurisdiction, Plaintiff must show that Defendants Granoff,

Krassenstein, and Astor Weiss "purposefully avail[ed themselves] of the privilege of

conducting activities within the form State, thus invoking the benefits and protections of

its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).  "The purposeful

availment requirement ensures that a defendant will not be haled into a jurisdiction as

the result of another party's unilateral acts."  *Trierweiler*, 90 F.3d at 1534.  In *Trierweiler*,

the Tenth Circuit held that the forum state lacked personal jurisdiction over the

defendant, an out-of-state law firm that prepared an opinion letter concerning perfection

of uncertified securities which was sent to the forum state by a third party.  *Id.*  The

Plaintiff argued that the defendant foresaw the letter being sent to the forum state and

even telephoned its eventual recipient about the matter.  *Id.*  The court nonetheless

dismissed the defendant from the action, holding that "the mere foreseeability of

causing injury in another state is not a sufficient benchmark for exercising personal

jurisdiction." *Id.* (quotation marks omitted).

As such, Plaintiff's allegations (1) and (2), listed above, are not sufficient to give rise to personal jurisdiction over Granoff, Krassenstein and Astor Weiss.  Personal jurisdiction cannot be based on the foreseeability that statements prepared by these Defendants or their agents would be received in Colorado.  Rather, Plaintiff must show that Granoff, Krassenstein, and Astor Weiss, directly or through their agents, purposefully availed themselves of the privilege of conducting activities in Colorado. Plaintiff fails to allege sufficient contacts under this standard.  First, Plaintiff's allegation that Granoff communicated directly with Colorado investors is based on apparently equivocal affidavit testimony of Mantria's Receiver, John Paul Anderson, despite the fact that this testimony was not based on Mr. Anderson's personal knowledge.  (ECF No. 89, at 13, Exhibit B, ¶ 20.)  "Affidavits submitted in support of or in opposition to [a] motion to dismiss for lack of [personal] jurisdiction must comply with the requirements of Rule 56(e).  Therefore, such affidavits must contain personal knowledge, admissible facts, and affirmative showing of competency."  *Fairbrother v. American Monument Foundation, LLC*, 340 F. Supp. 2d 1147, 1151 (D. Colo. 2004) (quoting *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1115 (D. Colo. 1999)). Thus, Mr. Anderson's affidavit testimony is not sufficiently competent proof of the facts supporting Plaintiff's jurisdictional allegation against Granoff and Krassentein and I choose not to consider it at this stage in the proceedings.

Plaintiff's allegations of Flannery's and Astor Weiss's direct contacts with

Colorado are also insufficient to subject Astor Weiss to the jurisdiction of this Court.

Plaintiff's allegation that Flannery approved Colorado investors, who were presumably

recruited by others, does not constitute "purposeful availment" required under

*International Shoe* and its progeny.  Likewise, Plaintiff's allegation that Astor Weiss

received funds from the forum state is insufficient to establish purposeful availment but

is rather a passive event triggered by a third party that cannot give rise to personal

jurisdiction.

Accordingly, I dismiss Defendants Granoff, Krassenstein, and Astor Weiss from

this action for lack of personal jurisdiction.  However, I decline to do the same for

Defendants Rink and Flannery since they are subject to valid claims for relief under the

Federal Securities Exchange Act.

B.    Whether Plaintiff Has Stated a Claim for Relief

Defendants argue that all claims brought against them are insufficient under

12(b)(6) and the governing pleading standards set forth in Fed. R. Civ. Pro. 8 and 9 and

the Private Securities Litigation Reform Act ("PSLRA").  I find that Plaintiff has failed to

state a claim for relief in Counts I and II (violation of sections 10(b) and 20(a) of the

Federal Securities Exchange Act, respectively) against Defendant Granoff and in Count

V (unjust enrichment) against any of the defendants.  Otherwise, I find Plaintiff has

made sufficient allegations to support its claims at this stage in the proceedings.

1.    Standard of Review

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). A court reviewing a 12(b)(6) motion "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Under Rule 8's general pleading standard, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

Claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard, which requires the claimant to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. PRO. 9(b). More specifically, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (internal quotation omitted).

The PSLRA likewise requires that a plaintiff in a securities fraud action "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). In addition, the plaintiff "shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind" for the fraud claim asserted.  15 U.S.C. § 78u-4(b)(2)(A).

2.      Whether Plaintiff Has Stated a Claim for Relief for Violation of Section 10(b) of the Securities Exchange Act

Plaintiff alleges that the following defendants violated 10(b) of the Securities Exchange Act: Tatum, Rink, Granoff, and Flannery.  Claims brought under Section 10(b) are analyzed under the PSLRA's heightened pleading standard.  To state a valid claim under Section 10(b), a plaintiff must allege that: "(1) the defendant made an untrue or made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

It is undisputed that Mantria made false financial statements to investors.  However, Defendants argue that Plaintiff has not alleged false statements that can be attributed to them personally with sufficient particularity.  Defendants also argue that Plaintiff has failed to sufficiently allege scienter.  Though Plaintiff alleges several false statements without the requisite level of specificity, Plaintiff sufficiently alleges at least two statements, at least one of which may be attributed to each of Defendants Rink, Granoff, and Flannery.   Accordingly, I deny these Defendants' motions to dismiss on this issue.

-16-

i.      Plaintiff's Allegations of False Statements and Omissions

Plaintiff alleges many false statements in the Complaint.  Though Plaintiff fails to specifically allege when and how several of these statements were made, Plaintiff alleges three statements with sufficient particularity as to time, place, and content:

First, Plaintiff alleges that promotional materials for Mantria's 17% promissory notes offering, dated July 1, 2008, claimed that Mantria was able to pay such high returns because it made significant profits off of home site sales in Tennessee.  (ECF No. 1, at ¶ 47(a).) However, Plaintiff alleges that Mantria home sales were mostly financed by one Mantria subsidiary, Mantria Financial, with investor funds purchased from another Mantria subsidiary, Mantria Realty Operational Group.  (ECF No. 1, at ¶ 51.)  In turn, Plaintiff alleges that Mantria ultimately generated only $138,647 and $55,999 from land sales in 2008 and 2009, respectively.

Second, Plaintiff alleges that a private placement memorandum for Mantria Industries, LLC 25% Profits Interest in Earthmate Waste Conversion System Sales, dated August 31, 2009, allegedly contained a false "Return on Investment Analysis Spreadsheet" that predicts returns of 450%.  The memorandum explained that the returns were to be paid from, among other things, profits from Mantria's sale of biochar production systems.  However, Mantria never generated any biochar.  Instead, it used millions in investor funds to build a nonfunctional biochar plant in Dunlap, Tennessee to lure additional investment.

Finally, Plaintiff alleges that Mantria offerings dated July 31, 2009, and August

31, 2009, included tables "which account for an allocation of 100% of the funds raised, but failed to disclose that Mantria used the funds to repay other investors." (ECF No. 1, at ¶ 55.)

In addition to these false statements, Plaintiff alleges a number of material omissions. More specifically, Plaintiff alleges that investors were entitled to know: "(i) payments to investors were not from profits, but only from new investors' investments (Compl. ¶¶ 51, 54, 55, 57, 68); (ii) in 2008 and 2009, Mantria only generated $138,647 and $55,999 from land sales, respectively (*Id.* ¶ 48); (iii) at the time of its August 31, 2009, offering that predicated investors returns on biochar sales, Mantria had not sold any biochar or had any operational biochar manufacturing systems (*Id.* ¶ 52); (iv) the principals of Speed of Wealth[, which advertised Mantria's securities,] were not licensed broker-dealers and were being paid a 12.5% commission on all sales of Mantria securities, thus depleting the cash available to fund operations. [(]*Id.* ¶ 56.[)]"  (ECF No. 89, at 21–22.)

    a. Plaintiff's Attribution of These Alleged False Statements
       and Omissions to Defendants Rink, Granoff, and
       Flannery

Plaintiff attributes at least one of the above statements to each of Defendants Rink, Granoff, and Flannery. First, Plaintiff alleges that Rink and Granoff prepared or were responsible for the materially misleading tables contained in Mantria's offerings dated July 31, 2009 and August 31, 2009. (ECF No. 1, at ¶ 55.) Second, Plaintiff alleges that Flannery prepared or reviewed several of Mantria's allegedly false

securities offerings, including Mantria's offering dated July 1, 2008, touting high investor returns based on real estate sales.  (ECF No. 1, at ¶¶ 47(a), 81–83.)[3]

Defendants Rink, Granoff, and Flannery argue that Plaintiff has failed to allege facts that sufficiently link them to the statements that they allegedly made.  Specifically, these defendants argue that it is not sufficient for Plaintiff to allege that they prepared false statements without also alleging that they possessed authority over whether and how to communicate those statements.  *E.g.*, (ECF No. 118, at 13) (quoting *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303 (2011)).

Plaintiff responds with two arguments. First, Plaintiff claims that it was not required to allege more than that Defendants Rink, Granoff, and Flannery participated in the preparation of the alleged false statements, and that it sufficiently linked these Defendants to at least one of the above noted statements.  (ECF No. 89, at 22).  In the alternative, Plaintiff argues that under the "Group Publication Doctrine" it is not required to identify the individual sources of the alleged false statements because those statements appeared in "group-published documents."  (ECF No. 89, at 23) (quoting *Schwartz v. Celestial Seasonings*, 124 F.3d 1246, 1254 (10th Cir. 1997)).  Defendants Rink, Granoff, and Flannery reply that *Schwartz* was overturned by the PSLRA and, alternatively, cannot be squared with *Janus. See, e.g.*, (ECF No. 62, at 17.).  In addition, Granoff argues that the group publication doctrine cannot apply to him because that doctrine applies only to directors and officers, and he was neither while

---

[3] In turn, it may be inferred that Plaintiff alleges Defendants Rink, Granoff, and Flannery, respectively, to have been responsible for the omissions detailed above that would have helped to cure the misleading nature of the statement that each defendant was alleged to have made.

employed at Mantria.  For these reasons, Defendants Rink, Granoff, and Flannery argue that Plaintiff may not successfully state a claim for relief under Section 10(b) on the basis of non-particularized group pleadings.

> b.  Requirement that Defendants "Made" a False Statement and the Group Publication Doctrine

To "make" a false statement in violation of Section 10(b), one must possess "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 131 S. Ct. at 2302.  In *Janus*, the Court held that the defendant, Janus Capital Management ("JCM"), could not be liable under section 10(b) for false statements in mutual fund prospectuses filed by Janus Investment Fund, even though JCM allegedly participated in the preparation of those materials.  *Id.* at 2304. The Court reasoned that "[o]ne who prepares or publishes a statement on behalf of another is not its maker."  *Id.* at 2302.

The Court in *Janus* analogized to *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), in which the Court rejected a section 10(b) claim "against companies involved in deceptive transactions, even when information about those transactions was later incorporated into false public statements." *Janus*, 131 S. Ct. at 2303-04 (citing *Stoneridge*, 552 U.S. at 161).  In turn, the Court reasoned, "We see no reason to treat participating in the drafting of a false statement differently from engaging in deceptive transactions, when each is merely an undisclosed act preceding the decision of an independent entity to make a public statement." *Id.* at 2304.

However, *Janus* does not address the "making" of statements that are published collectively by a group of equally authoritative individuals within an organization.  In *Schwartz*, the Tenth Circuit held that "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers."  *Schwartz*, 124 F.3d at 1254.  *Janus* and *Schwartz* are distinguishable insofar as *Janus* involved a statement drafted by one organization on behalf of another such that the latter had ultimate authority over the statement.  Such hierarchy does not apply in the case of a group-published statement published collectively by a corporation's directors and officers.  Thus, Defendants are incorrect to argue that *Janus* prohibits group pleadings in all circumstances.

Moreover, Defendants are wrong to argue that *Schwartz*'s allowance of group pleadings in certain circumstances was overturned by the PSLRA.  Defendants cite no cases in support of its argument, and the overwhelming majority of authority in this District holds that "[b]ecause the pleading standards of Rule 9(b) and the PSLRA are functionally the same, if not perfectly continuous, allegations of fraudulent group publications satisfy both sets of requirements."  *See, e.g.*, *Grubka v. WebAccess Intern., Inc.*, 445 F. Supp. 2d 1259, 1268 (D. Colo. 2006) (citations omitted).  I concur with that authority and hold that the group publication doctrine still applies where a corporation's directors and officers publish a false statement collectively.

c.  Application of *Janus* and *Schwartz* to the False
Statements Alleged by Plaintiff

I find that under *Janus* and *Schwartz*, Plaintiff has stated a valid claim for relief

under section 10(b) against Defendants Rink and Flannery, but not against Defendant

Granoff.  The complaint describes with particularity several false statements that

Defendants Rink, Granoff, and Flannery allegedly prepared.  Under *Janus*, the

defendants must not only have prepared these statements, but also had ultimate

authority over their content and their communication.  I find that Plaintiff has failed to

make these allegations against Granoff, who worked under Rink's authority as Mantria's

Financial Controller.  However, I find that Plaintiff has sufficiently alleged that Rink and

Flannery had ultimate authority over the statements that they allegedly prepared.  Rink

and Flannery were Mantria's Chief Financial Officer and Chief Legal Counsel,

respectively.  As such, it appears likely that they possessed ultimate authority over any

statement that they prepared or for which they were otherwise responsible.

Likewise, even if these statements were collectively published by Mantria after

Rink and Flannery prepared them, Rink and Flannery can still be held liable under the

group publication doctrine as set forth in *Schwartz* and its progeny.  Again, however,

Granoff's position prevents him from being held liable under this doctrine, which applies

only to corporate directors and officers.

Accordingly, I find that Plaintiff has sufficiently alleged that Defendants Rink and

Flannery, but not Granoff, made false statements.  Thus, I find that Plaintiff has failed to

state a claim against Granoff under section 10(b) and continue my analysis of Plaintiff's

claims against Rink and Flannery under that section.

ii.      Plaintiff's Allegations of Scienter

In addition to the false statements themselves, Plaintiff must allege that the relevant defendants made these statements with scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quotation marks omitted).  Scienter can be established by a showing of recklessness, defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Dronsejko v. Thornton*, 632 F.3d 658, 665 (10th Cir. 2011).

Plaintiff argues that scienter is established here by the pervasiveness of the alleged fraudulent statements and the fact that the relevant defendants possessed high-ranking positions at Mantria.  Plaintiff reasons, "It is inconceivable that senior officers of a small company, who interacted daily at executive meetings, could be unaware of an all encompassing [sic] fraud."  (ECF No. 89, at 25) (citing *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 943 n. 21 (9th Cir. 2003); *Stichting Pensioenfonds, ABP v. Qwest Communs. Int'l, Inc.*, 2005 U.S. Dist. LEXIS 9026 (D. Colo. Mar. 28, 2005)). In addition, Plaintiff cites *Marion v. Benistar, Ltd.*, 2005 U.S. Dist. LEXIS 3669 (E.D. Pa. Mar. 10, 2005) for the proposition that intent to defraud may be presumed because defendants were operating a Ponzi scheme while at Mantria.

In response to Plaintiff's first argument, Defendants Rink and Flannery cite *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1263-64 (10th Cir. 2001), for the proposition that scienter cannot be imputed to corporate officers based on their positions. In addition, Defendants distinguish *Marion* as a case involving alleged fraudulent transfer, not securities fraud.

I find that Plaintiff has sufficiently alleged scienter. Defendants mischaracterize Plaintiff's allegations as addressing only their positions; in fact, Plaintiff also relies on the magnitude of the alleged fraud. The Tenth Circuit has found "the magnitude of the alleged falsity" to be a significant factor in assessing whether a plaintiff has sufficiently alleged scienter. *Adams*, 340 F.3d at 1106. In *Adams*, the court held that scienter was sufficiently alleged where the defendant was CFO of a corporation whose accounting manipulations increased its income by more than 25%. *Id.* at 1106. The court relied, in part, on the defendant's senior position and on "the magnitude of the alleged falsity." *Id.* Defendants are correct that in *Adams* it was also alleged that the defendant there was told information which, if true, would have established his actual knowledge of the falsity of the statements at issue. *Id.* at 1088-89. However, there is nothing in *Adams* to suggest that the defendant's position and the magnitude of the fraud did not suffice to establish his scienter. Here, Plaintiff alleges fraud that is of even greater magnitude than was at issue in *Adams*. Whereas in *Adams* the accounting manipulations distorted the company's income by an alleged 25%, here Defendants Rink and Flannery allegedly helped operate a Ponzi scheme whose income was entirely fabricated. Under

these circumstances, I find that Plaintiff has sufficiently alleged that Rink and Flannery possessed scienter or, in other words, that they either knew that their alleged statements were false or were reckless in not knowing as much.

       iii.     Whether Tatum May Be Held Vicariously Liable for Rink's Alleged Violation of Section 10(b) and Other Tortious Conduct

Plaintiff alleges that Defendant Rink acted as an agent for Tatum in violating section 10(b) and committing other tortious acts.  Thus, Plaintiff argues that Tatum should be held vicariously liable for Rink's conduct.  Agency allegations are not subject to the PSLRA's or Rule 9(b)'s heightened pleading requirements, even when they are used to assert a claim for vicarious liability for violations of the Securities Exchange Act. *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290-91 (S.D.N.Y. 2005).  Instead, Plaintiff's agency allegations are subject to the standard set forth by Rule 8(a).

Colorado law provides that an employer "is liable to third parties for the negligence of its employees . . . while acting in the scope and course of employment." *Hamm v. Thompson*, 353 P.2d 73, 75 (Colo. 1960).  Defendant Tatum argues that it is not plausible that Rink acted within the scope and course of his employment with Tatum while simultaneously serving as CFO of Mantria.  In the alternative, Tatum argues that Plaintiff's agency allegations fail under Colorado and Pennsylvania law under the "adverse interest" exception, which provides that an agent's acts and knowledge will not be imputed to the principal if the agent's acts are adverse to the principal's interests. *See In re Star-Tech Sec. Litig.*, 905 F. Supp. 1416, 1422 (D. Colo. 1995).

I find Defendants arguments unavailing and conclude that Plaintiff's agency allegations are sufficient to state a claim for relief against Tatum based on Rink's conduct at this stage in the proceedings.  Tatum cites no authority in support of its proposition that Rink could not plausibly been acting within the scope and course of his employment while carrying out his duties as CFO at Mantria.  Moreover, Tatum ignores Plaintiff's allegations that Tatum provided Rink to Mantria as an interim CFO and that Tatum advertised on its website that Rink "holds his current CFO role [with Mantria] while maintaining his Financial Leadership Partnership with Tatum."  Compl., at ¶ 71. Tatum also ignores Plaintiff's allegation that Tatum "holds itself out as a service provider to companies in need of a short-term CFO."  I find these undisputed allegations sufficient to establish an agency relationship between Tatum and Rink at this stage of the proceedings.

In addition, I reject Tatum's argument that the adverse interest exception precludes vicarious liability in this case.  Tatum fails to identify the way in which Rink's conduct was adverse to its interests.  Tatum cites *In re Stat-Tech Securities Litigation*, 905 F. Supp. 1416 (D. Colo. 1995), in which a principal was not barred from suing its agents for fraud committed against the principal.  Here, Rink was not committing fraud against Tatum; he was allegedly defrauding third parties while operating as Mantria's CFO pursuant to Tatum's professional services agreement with Mantria.  Tatum has failed to show how Rink's conduct was adverse to its interests.  Accordingly, I hold that Plaintiff has sufficiently alleged a claim for vicarious liability against Tatum for Rink's

alleged participation in Mantria's Ponzi scheme.

        3.     Whether Plaintiff Has Stated a Claim for Relief Under Section 20(a)

Plaintiff alleges that the following defendants violated section 20(a) of the Securities Exchange Act: Tatum, Rink, Granoff, and Flannery. "[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Adams*, 340 F.3d at 1107.

The parties do not dispute that Plaintiff has alleged that Mantria committed several primary violations of securities laws by Mantria.  However, Defendants argue that Plaintiff has failed to adequately allege that they each had "control" over Mantria.

        i.     Plaintiff's Allegations of Control

Plaintiff has made the following allegations pertaining to Rink's control over Mantria: that Rink was the CFO of Mantria, Compl., at ¶¶ 15, 60, 62-68, 119-120; that misrepresentations at issue related to false financial information disseminated by Mantria, Compl., at ¶¶ 47, 48, 55-58; that Rink had control of Mantria's cash management, documentation, internal controls and planning and analysis, Compl., at ¶ 120; and that Rink participated in weekly staff meetings and "meetings of the executive." Compl., at ¶ 122.

Plaintiff has made the following allegations about Defendant Flannery's control over Mantria: that Flannery was Mantria's Chief Legal Officer & General Counsel, Compl., at ¶ 121; that Flannery was responsible to ensure Mantria's compliance with

applicable statutes and regulations, Compl., at ¶ 123; that Flannery participated in the weekly staff and executive meetings noted above, Compl., at ¶ 122; and that Flannery prepared several of Mantria's private placement memorandums, reviewed the subscription agreements to ensure investors were properly accredited, and approved investor questionnaires at closing, Compl., at ¶ 80, 91-92.

Plaintiff has made the following allegations about Defendant Granoff's control over Mantria: that Granoff acted as Mantria' Financial Controller, Compl., at ¶¶ 24, 98; that Granoff had access to all of Mantria's financial information, Compl., at ¶¶ 24, 98; and that Granoff prepared false financial results included in Mantria offering memoranda, Compl., at ¶¶ 55, 100.

ii.      Sufficiency of Plaintiff's Allegations

Plaintiff relies primarily on the Tenth Circuit's decision in *Adams* in arguing that its pleadings are sufficient to state a claim for control person liability against Rink, Granoff, and Flannery.  In *Adams*, the court held that it was reasonable to infer that a company's CFO was a "control person" on the basis of his position where it was alleged that his employer engaged in fraudulent financial reporting.  *Adams*, 340 F.3d at 1109. The court reasoned that the actionable claims of securities fraud at issue pertained to official reports of the company's financial performance and that "[a]s . . . chief financial officer, it is reasonable to infer that McKenzie had at least indirect control over . . . financial reporting."  *Id.*

In light of *Adams* and other relevant authority, I find that Plaintiff sufficiently

alleges control person liability against Rink and Flannery, but not against Granoff.  Like the defendant in *Adams*, Rink and Flannery are chief executives, and the actionable claims here pertain to statements that Rink and Flannery either prepared themselves, or had ultimate control over.  Plaintiff alleges that Rink prepared or was responsible for the false financial information contained in Mantria's offering statements dated July 31, 2009, and August 31, 2009. Compl., at ¶ 55.  Plaintiff also alleges that Flannery prepared or reviewed several of Mantria's allegedly false securities offerings, including Mantria's offering dated July 1, 2008, touting high investor returns based on real estate sales.  Compl., at ¶¶ 47(a), 81–83.  Based on these allegations, I find that Plaintiff has stated a claim for relief against both Rink and Flannery under section 20(a).

In contrast, Plaintiff has failed to allege that Defendant Granoff possessed control over Mantria.  Even assuming that Granoff helped to prepare false financial statements, he did so at the behest of Rink, to whom he reported. Unlike Rink, Granoff did not have control over the company's cash management, documentation, internal controls, planning, and analysis.  Further, whereas Flannery was a senior executive like Rink, Granoff was inferior to Rink.  Thus, though Plaintiff's allegations suggest that Rink and Flannery possessed direct or indirect "power to direct or cause the direction of [Mantria's] management and policies," *Adams*, 340 F.3d at 1108, they do not suggest the same of Granoff.

Accordingly, I find that Plaintiff states valid claims for relief under section 20(a) against Defendants Rink and Flannery, but not against Defendant Granoff.  In addition,

for the reasons stated above, I find that Plaintiff has sufficiently stated a claim for

vicarious liability against Tatum based on Rink's alleged violation of section 20(a)

> 4.     Whether Plaintiff States a Claim for Relief Under the Colorado
>        Uniform Fraudulent Transfer Act ("CUFTA") and the Pennsylvania
>        Uniform Fraudulent Transfer Act ("PUFTA")

Plaintiff claims that Mantria fraudulently transferred funds to all named

defendants in violation of CUFTA, COLO. REV. STAT. § 38-8-101, *et seq.*, and PUFTA, 12

PA. CON. STAT. § 5101, *et seq.*, (Counts III and IV, respectively).  Though these claims

include allegations of fraud against the transferor, they are not subject to Rule 9's

heightened pleading standard where, as here, the alleged transferor is operating a

Ponzi scheme.  *See Wing v. Horn*, 2009 U.S. Dist. LEXIS 77445, at *12, 14-16 (D. Utah

Aug. 26, 2009).  This is so because a fraudulent transfer claim requires only that the

transferor possess intent to defraud a creditor-plaintiff, and it may be inferred that a

transferor operating a Ponzi scheme possesses such intent by virtue of the transferor's

insolvency as a matter of law.  *See id.* at *12, 14-15.  Accordingly, Plaintiff's claims

under CUFTA and PUFTA are subject only to Rule 8's liberal pleading standard.

Under that standard, I find that Plaintiff has stated claims for relief against all

remaining defendants under both CUFTA and PUFTA.  Plaintiff alleges that Mantria's

transfer of funds were fraudulent under both the "actual" and "constructive fraud"

provisions of each statute.  12 PA. CON. STAT. § 5104(a)(1)-(2); COLO. REV. STAT. § 38-

8-105(1)(a)-(b).  In both states, a debtor's transfer of funds is actually fraudulent if it was

made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." COLO.

REV. STAT. § 38-8-105(1)(a); 12 PA. CON. STAT. § 5104(a)(1).  Also in both states, a

debtor's transfer of funds is constructively fraudulent if it was made:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (I) Was engaged or was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (II Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

COLO. REV. STAT. § 38-8-105(1)(b); 12 PA. CON. STAT. § 5104(a)(2).

Defendants do not dispute that Mantria, as a Ponzi scheme, possessed the

requisite intent to defraud its investors.  Instead, Defendants argue that Plaintiff has

failed to establish that they are "transferees" because, with the exception of certain

transfers to Flannery and Astor Weiss (whom I will dismiss from this action), Plaintiff

fails to allege transfers to the Defendants with specificity.

Notwithstanding Defendants' arguments, I find that Plaintiff's allegations suffice

to state claims for relief based on fraudulent transfer against the remaining Defendants.

Plaintiff has alleged that Mantria contracted for services, whether directly or indirectly,

with each of the remaining Defendants (Tatum, Rink, Flannery, and Estill & Long).

These transactions lend plausibility to Plaintiff's claims that the remaining Defendants

were either transferees or subsequent transferees of funds owed to Mantria's creditors.

Moreover, "[w]here a transfer is made for reasonably equivalent value is a question of

fact to be determined from all the evidence in a particular case." *Jobin v. Resolution

Trust Corp.*, 160 B.R. 161, 169 (D. Colo. 1993) (citations omitted).  Accordingly, I

decline to dismiss Plaintiff's fraudulent transfer claims against the remaining Defendants at this time.

      5.      Whether Plaintiff Has Stated a Claim for Relief for Unjust Enrichment

Plaintiff also brings claims against all of the remaining Defendants for unjust enrichment.  In Colorado, the elements of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it.  *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009).

I dismiss Plaintiff's claim as duplicative of its UFTA claims.  *See id.* at 1207 (holding unjust enrichment claim improper where there was adequate remedy at law). The benefits that Defendants allegedly received at Plaintiff's expense overlap with the funds that they allegedly received via Mantria's fraudulent transfers.  Plaintiff alleges that Mantria paid defendants investor funds and that it would be unjust to allow Defendants to retain these funds because Defendants allegedly participated in Mantria's scheme to defraud the investors comprising Plaintiff's class.  Though not identical to the allegations supporting Plaintiff's UFTA claims, these allegations put forth a similar theory of liability and are, thus, duplicative and improper.  For these reasons, I dismiss Plaintiff's claims for unjust enrichment against all Defendants.

      6.      Whether Plaintiff Has Stated a Claim for Relief for Negligent Misrepresentation

Plaintiff brings claims for negligent misrepresentation against the following

Defendants that have not already been dismissed from the action: Tatum, Rink, and

Flannery.  Unlike claims alleging fraud, claims for negligent misrepresentation are

governed by Rule 8's liberal pleading standard.  *Two Old Hippies, LLC v. Catch The*

*Bus, LLC*, 784 F. Supp. 2d 1200, 1209 n.1 (D.N.M. 2011); *Brandow Chrysler Jeep Co.*

*v. DataScan Techs.*, 511 F. Supp. 2d 529, 537 (E.D. Pa. 2007).

Both Colorado and Pennsylvania courts have adopted the elements for negligent

misrepresentation set out in Restatements (Second) of Torts § 552(1): "(1) in the course

of a business, profession, or employment, or in any transaction in which the defendant

has a pecuniary interest, (2) the defendant supplied false information (3) for the

guidance of others in their business transactions (4) causing the plaintiff pecuniary loss,

(5) the plaintiff justifiably relied on the information, and (6) the defendant failed to

exercise reasonable care or competence in supplying the information." *Agile Safety*

*Variable Fund, L.P. v. RBS Citizens, N.A.*, 793 F. Supp. 2d 1248, 1257 (D. Colo. 2011);

*Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005).

Regarding the third element, liability for negligent misrepresentation may arise only

when the information has been provided "for the benefit and guidance of a limited class

of prospective investors." *Eisenberg v. Gagnon*, 766 F.2d 770, 780 (3d Cir. 1985).

Defendants argue that Plaintiff fails to sufficiently allege that they made

misrepresentations.  In the alternative, Defendants argue that Plaintiff has failed to

allege that its class members relied on any alleged misrepresentation or that

Defendants provided misinformation for the benefit and guidance of a limited group of

investors.

I find that Plaintiff's pleadings with regard to negligent misrepresentation satisfy Rule 8's standard.  I have already found that Plaintiff has sufficiently alleged misrepresentations and scienter against Rink and Flannery under the PSLRA's heightened standard.  Having alleged such misrepresentations and the defendant's culpable mental state, I find plausible Plaintiff's allegations of reliance.

Finally, I find that Plaintiff has satisfied the "limited group" pleading requirement. Defendants argue that the alleged misrepresentations were disseminated to a wide audience, as Mantria promoted investment opportunities at widely attended seminars that were advertised via the internet, television, radio, and print media.  However, the limited group requirement is assessed through a foreseeability analysis, and Mantria's intentionally broad scope of communication made it foreseeable that a larger group of investors would be affected by its statements.  *See Walker v. Bloch*, 1995 WL 1787845, at *6 (M.D. Pa. Sep. 27, 1995) (holding limited group requirement satisfied where defendant made misrepresentations via public radio broadcast; "The artist is consciously addressing a great, though unseen and widely scattered, audience . . . . Therefore, we believe that a group of plaintiffs could be classified as a 'limited group' . . . when the plaintiffs become the intended victims of a 'Ponzi scheme' implemented through the use of the airwaves.").

Accordingly, I decline to dismiss Plaintiff's claims for negligent misrepresentation against Defendants Rink and Flannery.  Moreover, for the reasons stated above, I find

that Plaintiff has stated a sufficient claim for vicarious liability against Defendant Tatum

based on Rink's alleged negligent misrepresentation.

       7.     Whether Plaintiff States a Claim for Relief Under the Pennsylvania Securities Act

 Of the remaining defendants, Plaintiff brings claims against Tatum, Rink, and

Flannery for violation of the Pennsylvania Securities Act of 1972, 70 P.S. § 1-503(A).

More specifically, Plaintiff claims that Defendants Tatum, Rink, and Flannery under 70

P.S. § 1-503(a), which provides for joint and several liability against a defendant who

materially aids in an act constituting a primary violation of the Act under 70 P.S. § 1-

401.

     Plaintiff alleges that Rink and Flannery are liable under 70 P.S. § 1-503(a)

because they aided Mantria's fraudulent activity by preparing, reviewing, and approving

false statements described above.[4]  There is disagreement among Pennsylvania courts

as to whether preparation of false disclosures gives rise to a claim under 70 P.S. § 1-

503, or whether the statute requires a more direct participation in the fraudulent

securities transaction.  *Compare Fox Intern'l Relations v. Fiserv Sec., Inc.*, 490 F. Supp.

2d 590, 605-606 (E.D. Penn. 2007) (finding cause of action where defendant produced

false disclosures that were disseminated to prospective investors through third party)

*with Klein v. Boyd*, 949 F. Supp. 280, 283-84 (E.D. Penn 1996) (finding no cause of

---

[4] In its omnibus opposition, Plaintiffs argue that it has sufficiently stated a claim of secondary liability against Flannery based on allegations that he reviewed subscription documents and approved investors, accepted and took custody of investors' funds following a sale, and funneled investors' money to Mantria. Compl. at ¶¶ 21, 90, 91; Resp. at 33.  It is unnecessary to discuss these allegations in this order since I find Plaintiff's allegations of Flannery's preparation of false offering memoranda sufficient to give rise to secondary liability.

action against attorney-defendant who prepared disclosure documents for primary

violator; reasoning that statute "does not provide for cause of action against an aider

and abettor . . . . [Rather, the statute] grants a private remedy to a buyer only against

his seller").

I find the interpretation of the court in *Fox* more faithful to the plain meaning of

the statute's language.  The court's holding in *Klein* is based on an understanding that

the Pennsylvania Securities Act "grants a private remedy to a buyer only against his

seller."  *Klein*, 949 F. Supp. at 283 (quoting *Phar-Mor, Inc. Secs. Litig.*, 892 F. Supp.

676, 688 (W.D. Pa. 1995)).  I find this reading contrary to the text of the statute, which

clearly provides for liability not only against fraudulent sellers, but also against those

"who materially aid[] in the act or transaction constituting the [primary] violation."  70

P.S. § 1-503(a); *see also Brennan v. Reed, Smith, Shaw & McClay*, 304 Pa. Super.

399, 412 (1982) (seller's attorney may be held liable to investor under Pennsylvania

Securities Act).

In addition, I reject Defendant Rink's argument that Plaintiff must first obtain an

adjudication of primary liability against Mantria under section 501 prior to asserting a

claim for secondary liability against the defendants in this case.  Section 501 provides

for a private right of action for a violation of section 1-401, which "is modeled after Rule

10b-5 of the federal securities laws, and requires virtually the same elements of proof."

*Gilliand*, 2007 U.S. Dist. LEXIS 84508, *5 (W.D. Pa. Nov. 15, 2007).  As a result, I

decline to require a prior adjudication of a primary violation under the Pennsylvania Act

where, as here, there has already been an adjudication of primary violation of federal securities law.  Such a requirement would result "in fruitless and wasteful litigation," forcing victims of securities fraud to "go through the motions of obtaining a judgment against a directly liable party" before pursuing potentially more viable claims for secondary liability. *Gilliand*, 2007 U.S. Dist. LEXIS 84508, at *15, *16.

Because, as explained above, I find that Plaintiff adequately alleges that Defendants Rink and Flannery prepared false statements so as to materially aid in Mantria's Ponzi scheme, I find that Plaintiff has stated a claim of secondary liability under 70 P.S. § 1-503.

8.    Whether Plaintiff States a Claim for Relief Under the Colorado Securities Act

Plaintiff's final claim is against Estill & Long for violation of COLO. REV. STAT. § 11-51-604, which prohibits aiding and abetting of primary violations of Colorado securities law.  That subsection provides:

> Any person who knows that another person liable under subsection (3) or (4) of this section is engaged in conduct which constitutes a violation of section 11-51-501 and who gives substantial assistance to such conduct is jointly and severally liable to the same extent as such other person.

COLO. REV. STAT. § 11-51-604.  Plaintiff alleges that Estill & Long knowingly gave substantial assistance to Speed of Wealth and its officers in violating both federal and Colorado securities laws.

Estill & Long argue that Plaintiff has not sufficiently alleged a primary violation of Colorado securities law.  I reject this argument for the same reasons I rejected the

parallel argument against Plaintiff's Pennsylvania securities claims. "[T]he federal and [Colorado] state law concerning unlawful practices in connection with the purchase or sale of securities are quite parallel." *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 926-27 (10th Cir. 1992). It is unnecessary to require an adjudication of primary violation under state law where, as here, a primary violation of federal securities law has already been adjudicated. *See* Compl., at ¶33 (alleging that default was entered against Speed of Wealth in *SEC v. Mantria Corp., et al.*, No 09-cv-02676 (D. Colo. Mar. 15, 2011).

Regarding the remaining elements, I find plausible Plaintiff's allegations that Estill & Long knowingly and substantially assisted Speed of Wealth in its primary violation. Plaintiff alleges that Estill & Long acted as legal counsel to Speed of Wealth. Compl., at ¶192. Plaintiff alleges that, in its role as legal counsel, Estill & Long knew that Speed of Wealth's officers were not registered broker-dealers despite engaging in general solicitation of potential investors. *Id.* at ¶¶ 193-94. In addition, Plaintiff alleges that Estill & Long reviewed investor questionnaires and, as a result, knew that investors were not properly accredited to invest in Speed of Wealth securities offerings. *Id.* at ¶195. Nonetheless, Estill and Long allegedly funneled monies from non-accredited investors in furtherance of Mantria's and Speed of Wealth's fraudulent scheme. *Id.* at ¶196. I find these allegations sufficient to state a claim for relief for aider and abettor liability. Accordingly, I decline to dismiss Plaintiff's claim against Estill & Long under COLO. REV. STAT. § 11-51-501(5)(c).

IV.    CONCLUSION

For the reasons stated, I find that the Court lacks personal jurisdiction over Defendants Steven Granoff; Krassenstein, Granoff & Unger, LLC; and Astor, Weiss, Kaplan & Mandell LLP, but possesses personal jurisdiction over the remaining defendants.  In addition, I find that Plaintiff fails to state a claim for unjust enrichment (Count V).  Accordingly, it is

ORDERED that Defendants Steven Granoff and Krassenstein, Granoff & Unger, LLC's Motion to Dismiss (ECF No. 63) is **GRANTED** and that Defendants Tatum, LLC and SFN Group, Inc.'s Motion to Dismiss Counts I, II, III, IV, V, VI, and XI of Plaintiff's Complaint (ECF No. 29); Defendant Estill & Long's Fed. R Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 60); Defendants Astor, Weiss, Kaplan & Mandel LLP's and Christopher P. Flannery's Motion to Dismiss (ECF No. 61); and Defendant Daniel J. Rink's Motion to Dismiss Touchstone Group, LLC's Class Action Complaint (ECF No. 62) are **GRANTED IN PART**.  Defendants Granoff, Krassenstein, and Astor Weiss are **DISMISSED** from this action for lack of personal jurisdiction.  In addition, Plaintiff's claim for unjust enrichment (Count V) against all remaining defendants is **DISMISSED** for failure to state a claim.

Dated:  December 21, 2012.

BY THE COURT:

s/ Wiley Y. Daniel_____
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE